# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| **MICHAEL EYES,**<br>*Individually, and on behalf of himself and other similarly situated current and former employees*, | |
| **Plaintiff,** | |
| v. | NO. 2:20-CV-208-KAC-CRW |
| **UNITED PROPANE GAS, INC.** *and*<br>**LAKEWAY PROPANE GAS, INC.,** | FLSA Opt-In Collective Action |
| **Defendants.** | **JURY DEMANDED** |

## JOINT MOTION TO APPROVE SETTLEMENT

Named Plaintiff Michael Eyes ("Named Plaintiff"), individually and on behalf of the Opt-In Plaintiffs who joined this lawsuit (collectively with the Named Plaintiff, the "Plaintiffs"), and Defendants United Propane Gas, Inc, and Lakeway Propane Gas, Inc. ("Defendants" or "United Propane Gas," and collectively with the Plaintiffs, the "Parties") have reached a settlement in the above-captioned case. The Parties now respectfully request that the Court approve their settlement of this Fair Labor Standards Act ("FLSA") collective action seeking alleged unpaid overtime compensation and dismiss this case with prejudice. As detailed below, the Court should grant the Parties' Motion because this settlement is a fair, adequate, and reasonable resolution of the Parties' bona fide dispute as to liability and alleged damages under the FLSA.

## BACKGROUND

I. **Relevant Procedural and Factual Background**

On October 2, 2020, Named Plaintiff filed a Collective Action Complaint entitled *Eyes. v. United Propane Gas, Inc. et al.*, No. 2:20-cv-00208, in the United States District Court for Eastern District of Tennessee, which he subsequently amended on January 20, 2021 (the "Action"). [Docs. 1 and 19.] In the Action, the Named Plaintiff alleged that Defendants violated the FLSA by failing to pay him for all hours worked in excess of (40) hours per week at one and one-half times their regular rate of pay. The Named Plaintiff sought damages, penalties, attorneys' fees, and costs, on his own behalf and on behalf of other current and former delivery drivers and/ or traveling tank setters employed by Defendants or its affiliates, who he claimed were also denied one and one-half times their regular rate of pay for all hours worked in excess of (40) hours.

Defendants filed their Answers and Defenses to the Complaint and First Amended Complaint on December 11, 2020 and February 4, 2021, respectively, denying the allegations in the Complaint and First Amended Complaint, denying that they had violated the FLSA, and asserting various affirmative defenses to liability. [Docs. 13 and 26.]

The Parties have engaged in extensive fact discovery and depositions, exchanging numerous documents and other information, and providing information and data related to the claims and defenses. After deposing the Named Plaintiff and numerous Opt-In Plaintiffs, the Parties engaged in a good-faith negotiations and mediation. As a result of good faith negotiations and mediation, the Parties were able to reach an agreement to settle the claims in the Action. The Parties believe that the settlement reached in this matter represents a fair and reasonable compromise given the disputed matters at issue and the risks of continuing forward with litigation

on the merits, including an expected motion for summary judgment on liability as well as a motion requesting decertification.

## II. Terms of the Proposed Settlement Agreement

### A. Settlement Amount and Allocation

The proposed Settlement Agreement ("Agreement") contemplates a total settlement payment of $120,000 and is attached hereto as *Exhibit 1*. From this amount, each Plaintiff will receive an amount that is based on his/her respective dates of employment with Defendants, a blended rate of pay based on Defendants' payroll records, and an assumption of one (1) hour and twenty (20) minutes of overtime pay for fifty (50) percent of the weeks worked.

The Agreement includes Plaintiffs' Counsel's attorneys' fees and costs, and Plaintiffs' Counsel hereby also moves that its fees and costs be approved by the Court. *See In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-CV-83, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) (awarding a "reasonable attorney fee from [the common] fund as a whole"). Plaintiffs' counsel spent time and resources investigating the case, drafting the Complaint, conducting discovery and formulating a damages calculation tool that the Parties used in connection with their extensive negotiations. Plaintiffs' Counsel engaged in negotiations with Defendants' counsel and worked on the Agreement. Plaintiffs' Counsel will also continue to spend additional time finalizing the settlement and distributing the settlement proceeds to Plaintiffs. Plaintiffs' Counsel submits that this fee request, which includes all costs, is reasonable given the amount of work expended and results obtained. Finally, Defendants have agreed to pay this amount as attorneys' fees and costs and do not oppose Plaintiffs' Counsel's request.

The Agreement also includes service payments to the Named Plaintiff and certain Opt-In Plaintiffs, and Plaintiffs' Counsel also requests the Court's approval of such awards. "Numerous

3

courts have found it appropriate to specially reward named class plaintiffs for the benefits they have conferred" such as pursuing the class's interests "by filing suit on behalf of the members of the Class and undertaking the responsibilities attendant upon serving as a named plaintiff[.]" *Id.* at *3–*4; *see also Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) ("Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit. Numerous courts have authorized incentive awards."). The Agreement allocates a portion of the settlement amount to the Named Plaintiff and certain Opt-In Plaintiffs for the time and effort they incurred in securing the settlement in this Action (in addition to compensating them for their portion of the overall settlement proceeds), and an additional amount to the Named Plaintiff for the settlement and release of any and all claims set forth therein. The Named Plaintiff incurred personal risks by filing and participating in this action, spent time and effort in this case in order to confer economic benefits to the class members, and assisted Plaintiffs' Counsel through all stages of this case, including pre-filing investigation, discovery and depositions, and the settlement process. Finally, Defendants do not oppose such allocation to the Named Plaintiff and certain Opt-In Plaintiffs.

### B. Release of Claims

In exchange for the settlement amounts, Plaintiffs have agreed to dismiss the Action with prejudice. Further, Named Plaintiff and each and every Plaintiff, on behalf of his/her respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, have agreed to knowingly and voluntarily release and discharge Defendants (and related individuals and entities as described in the Settlement) from all known and unknown claims for overtime compensation, wages, liquidated

4

damages, penalties and interest under the FLSA or applicable state laws (including statutory and common law claims for breach of contract, unjust enrichment or other common law claims relating to wage and hour issues) arising from the each Plaintiff's employment with Defendants up to the date upon which the Court enters an Order granting approval of the Settlement ("Settlement Effective Date").

## ARGUMENT

The Parties have reached a settlement that each Party's counsel negotiated at arm's length and each Party believes fairly and reasonably resolves each Parties' claims and defenses.

## I. The Proposed Settlement Fairly and Reasonably Resolves the Parties Claims and Defenses.

### A. Standard for Approval of Settlement of FLSA Collective Actions

"An employee who has filed a lawsuit asserting FLSA claims against her employer may settle her case subject to judicial approval of the settlement with respect to the FLSA claims." *Thompson v. United Stone, LLC*, No. 1:14-CV-224, 2015 WL 867988, at *1 (E.D. Tenn. Mar. 2, 2015) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 113 n. 8 (1946)). In the absence of "binding authority holding that approval is not necessary," parties have presented district courts in this Circuit with a proposed settlement agreement for the court's review and approval. *Id.*; *see also Hajiani v. ESHA USA, Inc.*, No. 3:14-CV-594-TAV-HBG, 2017 WL 5163354, at *5 (E.D. Tenn. Nov. 7, 2017).

To approve a FLSA settlement, "a court must scrutinize the proposed settlement for fairness, and determine whether the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 3:11-CV-400, 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012) (quoting *Lynn's Food Stores, Inc.*

5

*v. U.S.*, 679 F.2d 1350, 1355 (11th Cir. 1982)). If the proposed settlement "does reflect a reasonable compromise over issues . . . that are actually in dispute the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.* (quoting *Lynn's Food Stores*, 679 F.2d at 1354); *see also Salinas v. U.S. Xpress Enterprises, Inc.*, No. 113CV00245TRMSKL, 2018 WL 1477127, at *3 (E.D. Tenn. Mar. 8, 2018) ("Courts may approve an FLSA settlement where such an agreement represented the 'resolution of a bona fide dispute over FLSA provisions.'").

Additionally, a court should also "separately assess the reasonableness of a plaintiff's attorney's fees in approving a settlement under the FLSA, even when the fee is negotiated as part of the settlement rather than judicially determined." *Wills v. Cellular Sales of Tennessee, LLC*, No. 1:12-CV-391-CLC-SKL, 2014 WL 8251539, at *1 (E.D. Tenn. Aug. 18, 2014) (citing *Lliguichuzhca v. Cinema 60, LLC*, 948 F.Supp.2d 362, 366 (S.D. N.Y. 2013)).

### B. A Bona Fide Dispute Exists Over Liability and Damages.

A bona fide dispute exists between the Parties in this Action. "The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA." *Estes v. Vanderpool Construction and Roofing, Inc.*, 2018 WL 3910999, at *2 (E.D. Tenn. July 30, 2018) (quoting *Edwards v. City of Mansfield*, No. 1:15-CV-959, 2016 WL 2853619, at *3 (N.D. Ohio May 16, 2016)). In reviewing the Agreement, the Court must ensure "that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Id.* (quoting Edwards, 2016 WL 2853619, at *3). Courts consider the following factors in determining whether a bona fide dispute exists: (1) the nature of

6

the dispute; (2) the employer's business and type of work performed by the employee; (3) the employer's reasons for disputing the employee's right to the claimed wages; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Salinas*, 2018 WL 1477127, at *3 (citing *Felix v. Thai Basil At Thornton, Inc.*, No. 14-cv-02567-MSK-CBS, 2015 WL 2265177 (D. Colo. May 6, 2015)).

A bona fide dispute clearly exists in this case as to whether Plaintiffs were entitled to one and one-half times their regular rate of pay for every hour worked in excess of forty (40), and if so, whether Defendant is responsible for those hours. Plaintiffs claim that they were expected to drive smaller vehicles as part of their job duties with a GVWR less than (5) tons in the transportation of Defendant's products, supplies, etc., and were not exempt from the payment of overtime for all hours worked in excess of forty (40). Defendant specifically denies Plaintiffs' claims and further denies that Plaintiffs are owed any additional wages under the FLSA. Defendant contends that in addition to driving smaller vehicles, Plaintiffs routinely drove a Bobtail Tanker Truck that had a GVWR in excess of (10) tons. Defendants also contend that Plaintiffs would fall into the outside sales exemption to the FLSA because Plaintiffs also sold propane as part of their job duties and/or are subject to the FLSA's retail/service exemption. Moreover, while Plaintiffs assert that this matter should be certified as a collective action, Defendants contend that the Action could not proceed as to certain individuals on a collective basis due to differences between and among the Plaintiffs.

In addition to the disputes regarding liability and decertification, there is also a dispute regarding damages components such as: how to calculate damages; whether liquidated damages

7

are available; and whether a two-year or three-year limitations period applies under the FLSA. Defendant believes that liquidated damages are inappropriate and that Plaintiffs face a significant risk that only the shorter two-year limitations period would apply to their claims.

Although the Parties firmly believe in the merits of their respective claims and defenses, given the risk of small potential recovery, the time and expenses associated with extensive litigation, and the uncertainty of future dispositive motion practice, decertification, and trial, the Parties agree that a compromise is appropriate at this stage of the litigation, and is in the best interest of the Parties and the public. The Parties desire to resolve the bona fide disputes within this Action by way of a negotiated settlement payment by Defendant in exchange for releases of claims by all Plaintiffs and dismissal of this Action, with prejudice, in order to avoid the time and expenses required with continued litigation. *See Salinas*, 2018 WL 1477127, at *2 ("The law favors compromise and settlement of collective actions."); *see also Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation.").

### C. The Settlement Is Fair and Reasonable.

In addition to resolving the bona fide dispute between the Parties, the Agreement is fair and reasonable, and should be approved. In determining whether a settlement is "fair, reasonable, and adequate," the court may consider several factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the state of the proceedings and the amount of discovery completed; (4) the probability of Plaintiffs' success on the merits; (5) the range of possible recovery, and (6) the opinions of counsel. *Salinas*, 2018 WL

8

1477127, at *4 (citing *Nutting v. Unilever Mfg. (U.S.) Inc.*, 2014 WL 2959481, at *3 (W.D. Tenn. June 13, 2014); *see also International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

First, there is no collusion that occurred between the Parties or their counsel. The settlement was reached as a result of arm's-length negotiations between the Parties at mediation and through experienced and knowledgeable counsel. *See Salinas*, 2018 WL 1477127, at *5 (finding no collusion where the settlement "was the results of highly qualified counsel carefully evaluating the risks and acting in good faith in the best interest of their clients").

Second, there is a significant risk of lengthy litigation and substantial expenses considering the complexity of the case. Without settlement, the Parties will continue to spend extensive time and resources engaging in discovery and briefing decertification and dispositive motions. After the resolution of such motions, the Parties would have to incur significant expenses in preparation of pretrial submissions and, eventually, a lengthy trial, as well as likely post-trial motions. In order to avoid the expenditure of such time and resources, the Parties directed their efforts toward an informed and efficient resolution of the Parties' claims. The discovery and mediation completed by the Parties enabled counsel to assess the respective strengths and weaknesses of each respective Parties' case and reach the conclusion that settlement is in the Parties' best interests.

Third, the proceedings have advanced through initial pleadings, fact investigation and discovery is nearly complete. The Parties, so far, have collected and reviewed relevant records and data and conducted 6 depositions of the Named Plaintiffs and Opt-In Plaintiffs. The Parties have engaged in negotiations with the mutual understanding that continuing with formal discovery,

9

including depositions of numerous personnel of Defendant, followed by dispositive motion practice, and a decertification motion process would be a difficult, costly, and uncertain process.

Fourth, while the probability of Plaintiffs' success on the merits is uncertain, the proposed settlement amount represents a fair settlement of the Plaintiffs' claims. While the amount each Plaintiff obtains will necessarily depend on his/her dates of employment with Defendant during the limitations period, the settlement is based on an assumption of an hour and twenty minutes of overtime for fifty (50) percent of the weeks worked by Plaintiffs. Plaintiffs and their counsel believe this is a fair recovery considering that Defendants had reasonable arguments for little to no recovery, decertification and a two-year limitations period, and against liquidated damages.

Fifth, the range of possible recovery in this case was uncertain. As noted above, Plaintiffs were at risk of recovering little or nothing due to substantive arguments and the possibility of decertification. Moreover, the Parties had very divergent positions on liability overall and damages.

Sixth, the Parties "were represented by experienced counsel, particularly adept at litigating wage and hour matters[.]" *Id.* at \*6 (finding this factor weighing in favor of approving the proposed settlement). Plaintiffs were represented by counsel who are well informed and experienced in collective wage and hour litigation, including class actions and certified collective actions, and were knowledgeable of the risks and benefits of the settlement. Defendants are also represented by counsel who have extensive litigation and settlement experience, including FLSA actions and other collective actions. Counsel for both Parties have advised their respective clients regarding the terms of the Agreement and have recommended approval of the settlement to the clients.

10

Case 2:20-cv-00208-KAC-CRW   Document 74   Filed 11/17/23   Page 10 of 14
PageID #: 389

Under the circumstances, the Agreement is fair, reasonable, and adequate for Plaintiffs, and the Court should approve the Agreement.

## II. Plaintiffs' Counsel's Requested Award of Attorneys' Fees and Costs Is Reasonable.

The proposed amount of attorneys' fees and costs to Plaintiffs' counsel as provided in the Agreement is reasonable and should be approved by the Court. The FLSA provides, "in addition to any judgment awarded to a plaintiff or plaintiffs . . . a reasonable attorney's fees to be paid by the defendant." 29 U.S.C. § 216(b). "It is long established that an award of attorney fees under § 216(b) is mandatory but the amount awarded is within the discretion of the district court." *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir. 1984). In the Sixth Circuit, the only requirement for awards of attorneys' fees and costs in common fund cases is that the award "be reasonable under the circumstances." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (citing *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983)). Courts may consider the following factors in determining if attorneys' fees are reasonable: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Salinas*, 2018 WL 1477127, at *9 (quoting *Hensley et al. v. Eckerhart et al.*, 461 U.S. 424, 433 (1983)).

11

Here, the proposed attorneys' fees and costs request is reasonable given the result obtained for the Plaintiffs, time expended by Plaintiffs' counsel, and the time yet to be expended in administering the proposed settlement. To date, Plaintiffs' Counsel have spent over 200 attorney hours litigating this matter and compiled approximately $11,052 in expenses and costs, plus an anticipated additional $1,000.00 in costs and expenses associated with settlement administration. *See Salinas*, 2018 WL 1477127, at *9 (quoting *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29162, at *35-36 (E.D. Pa. Oct. 13, 2004) ("There is no reason to reject the request for reimbursement of [expenses] that counsel have spent out of their own pockets in litigating [a class action] case."). Plaintiffs' Counsel fronted all the costs of litigation and Plaintiffs were under no obligation to repay Plaintiffs' Counsel if the case was unsuccessful. Plaintiffs' counsel will also pay the administrative costs out of the attorneys' fees received, which include costs for mailing notices and settlement checks, as well as past and future time finalizing the settlement agreement and the instant motions, and following up with Plaintiffs post-settlement. Furthermore, the negotiated attorneys' fees including expenses is 33.33% of the settlement. Finally, Defendants do not oppose the payment of the agreed-upon amount of Plaintiffs' Counsel's attorneys' fees, litigation expenses, settlement administration and costs from the settlement amount.

## CONCLUSION

This FLSA collective action settlement is the product of an arm's-length negotiation between Parties' counsel and it resolves bona fide disputes over Plaintiffs' FLSA claims. The settlement is fair and reasonable and provides Plaintiffs with significant monetary relief. Accordingly, the Parties jointly and respectfully request that the Court approve the Parties'

12

settlement and the distribution of the settlement amount to Plaintiffs in full as described in their Agreement. Further, Plaintiffs' Counsel request that this Court award reasonable attorneys' fees and litigation costs in the amount requested. Finally, the Parties jointly request that this action be dismissed with prejudice upon the Court's entry of an Order approving the settlement.

Respectfully submitted this 17th day of November, 2023.

/s/ J. Russ Bryant
Gordon E. Jackson (TN BPR #08323)
J. Russ Bryant (TN BPR #33830)
**JACKSON SHIELDS YEISER HOLT OWEN & BRYANT**
Attorneys at Law
262 German Oak Drive
Memphis, Tennessee 38018
Telephone: (901) 754-8001
Facsimile: (901) 754-8524
*rbryant@jsyc.com*

**Attorneys for Plaintiffs**

&

/s/J. Chadwick Hatmaker
J.Chadwick Hatmaker (BPR # 018693)
J. Keith Coates Jr. (BPR #025839)
Kaitlyn E. Hutcherson (BPR #035188)
**WOOLF, McCLANE, BRIGHT, ALLEN & CARPENTER, PLLC**
Post Office Box 900
Knoxville, TN 37901
Tel: (865) 215-1000
Fax:215-1001
*chatmaker@wmbac.com*
*kcoates@wmbac.com*
*khutcherson@wmbac.com*

**Attorneys for Defendants**

13

**CERTIFICATE OF SERVICE**

       I hereby certify that on this the 17th day of November, 2023, a true and correct copy of the foregoing has been filed with the Clerk of the United States District Court for the Eastern District of Tennessee using the Court's electronic filing system.

                                          */s/ J. Russ Bryant*
                                          J. Russ Bryant

Case 2:20-cv-00208-KAC-CRW   Document 74   Filed 11/17/23   Page 14 of 14
PageID #: 393